UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **SERGIO TREVINO,** § | | |
| **TDCJ No. 02062898,** § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| v. § | Civil No. SA-19-CA-0352-DAE | |
| § | | |
| **LORIE DAVIS, Director,** § | | |
| **Texas Department of Criminal Justice,** § | | |
| **Correctional Institutions Division,** § | | |
| § | | |
| Respondent. § | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are *pro se* Petitioner Sergio Trevino's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Petitioner's Memorandum in Support (ECF No. 2), Respondent Lorie Davis's Answer (ECF No. 11), and Petitioner's Reply (ECF No. 16). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

**I. Background**

In December 2015, Petitioner plead guilty to three counts of aggravated sexual assault of a child and two counts of indecency with a child by contact. (ECF No. 13-15 at 1-6). Pursuant to the plea bargain agreement, Petitioner judicially confessed to committing the offenses, acknowledged that the first three counts were not probation eligible, and waived his right to appeal. *Id*. Following a separate punishment hearing, Petitioner was sentenced to seventy years of imprisonment on the first three counts and fifteen years of imprisonment on the last two counts,

with the sentences to run concurrently. *State v. Trevino*, No. 14-1951-CR-C (25th Dist. Ct., Guadalupe Cnty., Tex. Mar. 21, 2016); (ECF No. 13-48 at 8-9).

Because he waived the right to appeal as part of the plea bargain agreement, Petitioner did not file a direct appeal of his convictions and sentences. Instead, he filed a state habeas corpus application on January 10, 2017, seeking permission to file an out-of-time appeal. *Ex parte Trevino*, No. 86,428-01 (Tex. Crim. App.); (ECF No. 13-22 at 24). The Texas Court of Criminal Appeals (TCCA) eventually denied this application without written opinion on September 12, 2018. (ECF No. 13-2). Two weeks later on September 28, 2018, Petitioner filed a second state habeas corpus application challenging his underlying convictions and sentences which was also denied without written order by the TCCA on January 30, 2019. *Ex parte Trevino*, No. 86,428-02 (Tex. Crim. App.); (ECF Nos. 13-24, 13-36 at 8).

Petitioner placed the instant federal habeas petition in the prison mail system on April 1, 2019. (ECF No. 1 at 10). In the petition, Petitioner raises the same allegations that were rejected by the TCCA during his second state habeas proceeding—namely, that (1) his trial counsel rendered ineffective assistance by misleading him to think he had an opportunity to receive deferred adjudication probation at sentencing, and (2) his guilty plea was not knowingly and voluntarily made. In her answer, Respondent relies on the state court's adjudication of these allegations and argues federal habeas relief is precluded under the AEDPA's deferential standard. (ECF No. 11).

## II. Timeliness

Respondent first contends the allegations raised in Petitioner's federal habeas petition are barred by the one-year limitation period of 28 U.S.C. § 2244(d). Section 2244(d) provides, in relevant part, that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

In this case, Petitioner's convictions became final April 20, 2016, when the time for appealing the judgments expired. *See* Tex. R. App. P. 26.2 (providing a notice of appeal must be filed within thirty days following the imposition of a sentence). As a result, the limitations period under § 2244(d) for filing a federal habeas petition challenging his underlying convictions and sentences expired a year later on April 20, 2017. Petitioner did not file his § 2254 petition until April 1, 2019—almost two years after the limitations period expired—thus, his petition would be barred by the one-year statute of limitations unless it is subject to either statutory or equitable tolling.

Petitioner is entitled to statutory tolling under 28 U.S.C. § 2244(d)(2). Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." As discussed previously, Petitioner first challenged the instant conviction in a state habeas application filed on January 10, 2017, which was later denied by the TCCA on September 12, 2018. Thus, during the time the state habeas application was pending, the limitations period was tolled for a total of 610 days. Similarly, Petitioner's second state habeas application—filed September 28, 2018, and denied by the TCCA on January 30, 2019—tolled the limitations period for 125 days, making his federal petition due by April 25, 2019. As a result, Petitioner's federal habeas petition, filed April 1, 2019, was therefore timely.

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

In this case, Petitioner's convictions became final April 20, 2016, when the time for appealing the judgments expired. *See* Tex. R. App. P. 26.2 (providing a notice of appeal must be filed within thirty days following the imposition of a sentence). As a result, the limitations period under § 2244(d) for filing a federal habeas petition challenging his underlying convictions and sentences expired a year later on April 20, 2017. Petitioner did not file his § 2254 petition until April 1, 2019—almost two years after the limitations period expired—thus, his petition would be barred by the one-year statute of limitations unless it is subject to either statutory or equitable tolling.

Petitioner is entitled to statutory tolling under 28 U.S.C. § 2244(d)(2). Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." As discussed previously, Petitioner first challenged the instant conviction in a state habeas application filed on January 10, 2017, which was later denied by the TCCA on September 12, 2018. Thus, during the time the state habeas application was pending, the limitations period was tolled for a total of 610 days. Similarly, Petitioner's second state habeas application—filed September 28, 2018, and denied by the TCCA on January 30, 2019—tolled the limitations period for 125 days, making his federal petition due by April 25, 2019. As a result, Petitioner's federal habeas petition, filed April 1, 2019, was therefore timely.

Respondent does not dispute that Petitioner was entitled to statutory tolling. Rather, Respondent argues that Petitioner's conviction became final on the day he was sentenced (as opposed to 30 days afterward) because he expressly waived his right to appeal in the plea agreement. According to Respondent, Petitioner "had no expectation of relief through direct appeal due to his plea bargain" and thus is not entitled to the 30 days normally given to petitioners to seek direct review. While not expressly stated, Respondent essentially seeks to undo over twenty years of this Court's precedents allowing guilty pleas in Texas to become final, for limitations purposes, thirty days after the imposition of the sentence. But to support her novel approach, Respondent cites only a smattering of district court cases from the Southern District of Texas, the most recent being from 2014. Absent more persuasive authority, this Court holds that Petitioner's conviction became final April 20, 2016—30 days after the trial court sentenced him to prison. His federal habeas petition is therefore timely.

### III. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected

in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### IV.  Merits Analysis

Petitioner contends that his guilty plea was not knowingly and voluntarily made, and that counsel was ineffective for failing to fully explain the consequences of the plea agreement. These allegations are based around two stipulations found in Petitioner's plea agreement: (1) that the first three counts of aggravated sexual assault of a child were not probation eligible, while the

remaining two counts of indecency with a child were eligible for deferred adjudication if granted by the trial court; and (2) the punishments for all of the counts were to run concurrently. (ECF No. 13-15 at 1-6). Because the counts were to run concurrently, Petitioner contends it was realistically impossible for him to have been sentenced to deferred adjudication probation but that he plead guilty under the false promise of an opportunity for probation.

As discussed below, the record clearly demonstrates that Petitioner voluntarily pleaded guilty to the convictions he is now challenging under § 2254. Moreover, these allegations were rejected by the state court during Petitioner's state habeas proceedings. Federal habeas relief is therefore unavailable because Petitioner has not shown that the state court's merits adjudication was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *Richter*, 562 U.S. at 101.

**A.      Petitioner's Plea Was Voluntary**

It is axiomatic that a guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012).

The record in this case indicates Petitioner's plea was a voluntary and intelligent choice and was not a result of any misrepresentation. On the day of his trial, Petitioner appeared in open court represented by attorney Cathy Compton. (ECF No. 13-14). Counsel indicated her belief that Petitioner was competent, and Petitioner stated he was satisfied with Ms. Compton's representation. *Id*. at 10. Petitioner was then admonished by the trial court about the charges against him, the range of punishment he was facing, and the rights he was giving up by not going to trial. *Id*. at 10-14. The plea agreement was also shown to Petitioner, who indicated that he had discussed the issues with counsel and understood the rights he was giving up. *Id*. at 14-15. Counsel confirmed she had been through these documents thoroughly with Petitioner and that Petitioner understood the documents he was signing. *Id*. Following this discussion, the trial court approved the plea agreement. *Id*.

Petitioner's formal declarations in open court carry "a strong presumption of verity" and constitute a formidable barrier to any subsequent collateral attack. *United States v. Kayode*, 777 F.3d 719, 729 (5th Cir. 2014) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). But even without the in-court declarations, the voluntariness of Petitioner's plea is demonstrated by his signature on the plea-bargain agreement itself. (ECF No. 13-15 at 1-6). Among other things, the plea agreement stated Petitioner was pleading guilty to three counts of aggravated sexual assault of a child (first degree felonies) and two counts of indecency with a child (second degree felonies), listed the relevant punishment ranges, and explained that Petitioner was not eligible to receive probation as punishment for the first three counts. *Id*. The plea agreement also stated he had read and understood the terms of the plea agreement and the trial court's admonishments, that his attorney has explained the legal effects of the agreement, and that he is knowingly and voluntarily waiving his rights and pleading guilty. *Id*.

Petitioner's signature on the guilty plea documents is *prima facie* proof of the validity of the pleas and is entitled to "great evidentiary weight." *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994); *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (citing *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)). Thus, because Petitioner has not provided any evidence or argument that would overcome these "strong presumptions of verity," this Court denies any allegation made by Petitioner concerning the validity of his guilty plea. *See Blackledge*, 431 U.S. at 74 (finding "[t]he subsequent presentation of conclusory allegations which are unsupported by specifics is subject to summary dismissal.").

## B.     Trial Counsel's Performance

Petitioner contends his plea was involuntary because his attorney, Cathy Compton, incorrectly advised him about his chances of receiving a sentence of deferred adjudication probation. The appropriate standard to evaluate the effectiveness of counsel with regard to a guilty plea is the familiar *Strickland* two-part test. *Hill*, 474 U.S. at 58 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

Under *Strickland*, Petitioner must demonstrate (1) counsel's performance was deficient, and (2) this deficiency prejudiced his defense. 466 U.S. at 687-88, 690. To establish counsel's performance was deficient, a petitioner must first show his counsel's performance fell below "an objective standard of reasonableness." *Id*. at 688–89. But, in the context of a guilty plea, proving *Strickland*'s prejudice requirement turns "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S at 59. This means, "in a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error" and, instead, "would have insisted upon going to

trial." *Armstead v. Scott*, 37 F.3d at 206 (citations omitted). This assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id*.

Petitioner contends that his plea was involuntary because counsel misled him about his chances to receive a probated sentence. According to Petitioner, counsel should have explained that he had no realistic chance to be placed on probation due to the stipulation that all of his counts, including those on which he was eligible to receive probation, must run concurrently. But as discussed previously, the plea agreement and Petitioner's formal declarations in open court demonstrate Petitioner's awareness of the "relevant circumstances and likely consequences" of his plea. *Bradshaw*, 545 U.S. at 183. Petitioner's plea agreement also stated he understood the terms of the plea agreement, that his attorney has explained the legal effects of the agreement, and he was not coerced or misled into making the plea.

Moreover, Petitioner testified during his sentencing proceeding that he understood the punishment range he was facing as a result of his guilty plea. (ECF No. 13-50 at 66-67) (stating he has "accepted knowing that my consequences could be anywhere from the bottom to 99 years in prison."). Petitioner even acknowledged his understanding that he was only asking for probation on the counts on which he was eligible for probation, and not the other counts. *Id*. at 69. This is confirmed by counsel's closing argument where she admitted Petitioner had to be sentenced to prison time for the first three counts but asked the trial court for leniency and deferred-adjudication probation for the remaining counts. *Id*. at 92-93.

The record in this case demonstrates on numerous occasions that Petitioner was well aware that he was not eligible for deferred-adjudication probation for his aggravated sexual assault offense. Conversely, Petitioner is unable to point to anything in the record to support his assertions that counsel misled him about the possibility of receiving a probated sentence on these charges,

much less that the plea agreement was somehow "inherently unenforceable" simply because certain counts were not probation eligible. Petitioner's conclusory and unsupported allegations of counsel's misrepresentations are not enough to establish deficient performance under *Strickland*. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)). Petitioner thus fails to establish that his guilty plea was involuntary due to any alleged deficiencies in counsel's performance.

Even assuming counsel was deficient, Petitioner still cannot show he would not have accepted the current plea and would have instead insisted on going to trial but for counsel's error. *Armstead*, 37 F.3d at 206. Again, such an assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id*. The record is silent as to whether Petitioner would have made the decision to plead not guilty and go to trial had counsel further emphasized the unlikelihood that he would be sentenced to deferred-adjudication probation. In signing the plea agreement, however, the record does indicate that counsel fully explained his rights and the plea agreement to Petitioner, that Petitioner understood he was not eligible for deferred-adjudication probation for certain counts, and that Petitioner admitted he committed each of the five offenses he was charged with. Thus, based on the record before the Court, it appears unlikely Petitioner would have chosen to go to trial.

In light of the record evidence supporting the voluntariness of his guilty plea, in addition to the fact Petitioner failed to prove counsel's performance was deficient or his plea was involuntary due to ineffective assistance of counsel, this Court must find Petitioner entered into his plea voluntarily, knowingly, and intelligently. Moreover, Petitioner completely failed to prove that, but for his attorney's actions, he would have chosen to proceed to trial. Petitioner has

therefore failed to establish a valid ineffective-assistance claim. *Hill*, 474 U.S. at 58. Accordingly, federal habeas relief must be denied because Petitioner fails to meet his burden of proof under the AEDPA. 28 U.S.C. § 2254(d).

## V. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## VI. Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the

evidence presented during Petitioner's state trial and habeas corpus proceedings. Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner Sergio Trevino's § 2254 petition (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this the 29 day of May, 2020.

                                                **DAVID A. EZRA**
                                                **SENIOR U.S. DISTRICT JUDGE**